# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 7, 2023

Lyle W. Cayce
Clerk

_____

No. 23-40582

_____

Honorable Terry Petteway; Honorable Derrick Rose; Honorable Penny Pope,

*Plaintiffs—Appellees*,

*versus*

Galveston County, Texas; Mark Henry, *in his official capacity as Galveston County Judge*; Dwight D. Sullivan, *in his official capacity as Galveston County Clerk*,

*Defendants—Appellants*,

_____

United States of America,

*Plaintiff—Appellee*,

*versus*

Galveston County, Texas; Galveston County Commissioners Court; Mark Henry, *in his official capacity as Galveston County Judge*,

*Defendants—Appellants*,

_____

1

DICKINSON BAY AREA BRANCH NAACP; GALVESTON BRANCH NAACP; MAINLAND BRANCH NAACP; GALVESTON LULAC COUNCIL 151; EDNA COURVILLE; JOE A. COMPIAN; LEON PHILLIPS,

*Plaintiffs—Appellees*,

*versus*

GALVESTON COUNTY, TEXAS; MARK HENRY, *in his official capacity as Galveston County Judge*; DWIGHT D. SULLIVAN, *in his official capacity as Galveston County Clerk*,

*Defendants—Appellants*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC Nos. 3:22-CV-117, 3:22-CV-57,
3:22-CV-93

---

Before RICHMAN, *Chief Judge*, and JONES, SMITH, BARKSDALE, STEWART, ELROD, SOUTHWICK, HAYNES, GRAVES, HIGGINSON, WILLETT, HO, DUNCAN, ENGELHARDT, OLDHAM, WILSON, and DOUGLAS, *Circuit Judges*.

PER CURIAM:[1]

IT IS ORDERED that Appellants' opposed motion to stay the district court's October 13, 2023 Order and its November 30, 2023 order and from any further action altering the boundaries of the Galveston County

---

[1] RICHMAN, Chief Judge, and JONES, SMITH, BARKSDALE, ELROD, WILLETT, HO, DUNCAN, ENGELHARDT, OLDHAM, and WILSON, Circuit Judges, voted to grant a stay pending appeal. STEWART, SOUTHWICK, HAYNES, GRAVES, HIGGINSON, and DOUGLAS, Circuit Judges, voted to deny a stay pending appeal.

2

No. 23-40582

Commissioners Court precincts during the pendency of this appeal is GRANTED.

ANDREW S. OLDHAM, *Circuit Judge*, joined by JONES, SMITH, BARKSDALE, ELROD, WILLETT, DUNCAN, ENGELHARDT, and WILSON, *Circuit Judges*, concurring:

A federal court replaced the district map chosen by the people of Galveston County with a judicially created one. A panel of our court held that result was commanded by circuit precedent. *Petteway v. Galveston County*, 86 F.4th 214, 216–18 (5th Cir. 2023) (per curiam). But all three panel members underscored their "agree[ment] that this court's precedent permitting aggregation should be overturned. We therefore call for this case to be reheard *en banc*." *Id.* at 218. A majority of judges in active service agreed and voted to rehear the case. 2023 WL 8223483 (5th Cir. Nov. 28, 2023).

The next question is what rules should govern Galveston County's district lines pending *en banc* rehearing. And the answer is clear: the *Purcell* principle requires a stay. *See Purcell v. Gonzales*, 549 U.S. 1 (2006) (per curiam). *Purcell* requires courts to consider the effect of late-breaking judicial intervention on voter confusion and election participation. *See id.* at 4–5. Since *Purcell*, the Supreme Court has "repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (per curiam) (citations omitted); *see also Democratic Nat'l Comm. v. Wis. State Legislature*, 141 S. Ct. 28, 28 (2020) (mem.) (Roberts, C.J., concurring) (staying judicial intervention "in the thick of election season").

Citing *Purcell*, the Supreme Court refused to bless judicial intervention in State elections 21 days before the general election date, *see Veasey v. Perry*, 574 U.S. 951 (2014) (mem.), 34 days before the general election date, *see Merrill v. People First of Alabama*, 141 S. Ct. 25 (2020) (mem.), 46 days before the general election date, *see Andino v. Middleton*, 141 S. Ct. 9 (2020) (mem.), 48 days before the primary election date, *see Raysor*

4

*v. DeSantis*, 140 S. Ct. 2600 (2020) (mem.), 92 days before the primary election date, *Moore v. Harper*, 142 S. Ct. 1089 (2022) (mem.), and 120 days before the primary election date. *See Merrill v. Milligan*, 142 S. Ct. 879, 879 (2022) (mem.).

In this case, Galveston officials originally selected the following map for county commissioner precincts ("Original Map"):



ROA.24458–24459. If we allowed the district court's injunction to go into effect, the Galveston voters would have this map ("Judicial Map"):

No. 23-40582



ROA.24458–24459.

Absent a stay, Galveston County's voters would be forced to vote under the new Judicial Map even before we could determine whether VRA § 2 or the Fourteenth Amendment allowed that result. On November 30, 2023, the district court entered an order implementing the Judicial Map. That was *less than two weeks* before Texas's filing deadline on December 11, 2023. Moreover, our next en banc sitting is January 23–25, 2024. So even if we were to hear the case in January and release a decision on the lawfulness of the maps on the same day we heard argument, it would be only 42 days before the Texas primary election on March 5, 2024. Even that is far too late for a federal court to tinker with the machinery of a state election and to displace the Original Map. *See e.g.*, *Raysor,* 140 S. Ct. at 2600; *Middleton*, 141 S. Ct. at 9. These principles apply *a fortiori* to any en banc rehearing after March 5.

If we did not stay this "extraordinary departure from the traditional course of relations between the States and the Federal Government," *Shelby County v. Holder*, 570 U.S. 529, 545 (2013) (citation omitted), the people of Galveston would have to endure an entire election cycle under a "federal

6

intrusion into sensitive areas of state and local policymaking," *ibid.* (citation omitted). Moreover, we cannot change the shape of the four districts *after* county voters have already voted for their party candidates for those set districts. *Cf. Merrill v. Milligan*, 142 S. Ct. at 879–81 (Kavanaugh, J., concurring). So our choice is either to enter a stay now or allow Galveston County voters to use the (potentially unlawful) Judicial Map until *after* the November 2024 general election. We properly chose now.

Finally, a word on the merits. As the Supreme Court has made clear, we must "be certain of Congress' intent before finding that federal law overrides the usual constitutional balance of federal and state powers." *Bond v. United States*, 572 U.S. 844, 858 (2014) (quoting *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991)) (quotation omitted). That Congress must authorize encroachments upon state sovereignty through "unmistakably clear" statutory language suggests plaintiffs' coalition claim must fail. *Gregory*, 501 U.S. at 460 (quoting *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 242 (1985)). As the Sixth Circuit has recognized, such unambiguous language is lacking here because "[a] textual analysis of § 2 reveals no word or phrase which reasonably supports combining separately protected minorities." *Nixon v. Kent County*, 76 F.3d 1381, 1387 (6th Cir. 1996) (en banc). Moreover, it is not at all clear that coalition claims are permissible under the anti-proportional-representation provision of VRA § 2. *See* 52 U.S.C. § 10301(b); *see also* Comment, Christopher E. Skinnell, *Why Courts Should Forbid "Minority Coalition" Plaintiffs under Section 2 of the Voting Rights Act Absent Clear Congressional Authorization*, 2002 U. Chi. Legal F. 363, 377 ("Just because Congress clearly intended to interfere with state election systems by passing and amending the VRA, it does not inevitably follow that courts should infer an intention to interfere to such a degree as to encompass minority coalitions."). Nor is it clear how much "scholarship supports [the district court's] application of Section 2." *Post*, at 19 n.2 (Higginson, J.,

dissenting) (principally citing Scotty Schenk, *Why* Bartlett *is Not the End of Aggregated Minority Group Claims Under the Voting Rights Act*, 70 Duke L.J. 1883, 1889 n.29 (2021)). *But see* Schenk, 70 Duke L.J. at 1889 ("Scholarly views on aggregated claims under Section 2 are split.").

At the end of the day, plaintiffs would read § 2 to require race-based redistricting with no logical endpoint. The County has shown a likelihood of success in arguing that is unlawful. The County has also shown the other stay factors required by *Nken v. Holder*, 556 U.S. 418 (2009). Therefore, the *en banc* court was correct to stay implementation of the Judicial Map.

Priscilla Richman, *Chief Judge*, concurring:

I concur in granting a stay of the district court's October 13, 2023 and November 1, 2023 orders that adopted "Map 1" as the remedial plan for governing the 2024 election of members of the Galveston County Commissioners Court. The filing deadline for candidates for that Commission, and other state and federal candidates for the 2024 election in Texas, is December 11, 2023, which is four days from today. For the reasons explained in Judge Oldham's concurring opinion, a decision needs to be made at this juncture as to what map will be used to establish the districts from which the Commissioners will be elected. Even if we heard this case en banc in January, and the outcome of the appeal were that the map that is permitted to go into effect now, in December 2023, is not the map that should have governed, we cannot (or at least should not) consider unraveling what will have transpired in order to put into place a different map just before the March 2024 primary elections, or worse yet, after the March 2024 primary elections.

I do not know how the en banc court will rule. I remain open on the underlying merits and await full briefing, argument, and deliberation before deciding the important issues presented in this appeal. But our court is confronted with deciding, now, which map is going to apply. We must do so based on neutral principles. The Supreme Court has provided guidance, which we must apply, and that guidance is found in *Purcell v. Gonzalez*,[1] and decisions applying it.

To me, a critical issue is whether Galveston County must establish that it is likely to succeed on the merits. Judge Higginson's dissenting

---

[1] 549 U.S. 1 (2006).

No. 23-40582

opinion in the present case looks to the *Nken v. Holder*[2] factors that typically apply in determining whether a stay pending appeal should be granted. One of the most significant factors in *Nken* is likelihood of success on the merits. However, when a stay is requested that impacts elections, and the commencement of the election process is imminent, the Supreme Court has applied *Purcell*, and generally has not considered likelihood of success on the merits, though dissenting Justices have lamented the removal of that factor from the equation.[3]

If likelihood of success on the merits is a factor, even in applying *Purcell*, the question is whether the law that existed when the district court ruled is the measure. Or, instead, may an appellate court with the power to abrogate existing case law consider what it thinks the law, correctly interpreted, will be once the appeal is finally decided. The procedural posture of this case is somewhat unusual and raises this question.

A panel of this court affirmed the district court's order, concluding that existing precedent in this Circuit "permits distinct minority groups to be aggregated under Section 2" of the Voting Rights Act.[4] However, the panel disagreed with that precedent and called for en banc rehearing.[5] This

---

[2] 556 U.S. 418, 437 (2009).

[3] *See Veasey v. Perry*, 574 U.S. 951, 952 (2014) (GINSBURG, J., dissenting) ("Refusing to evaluate defendants' likelihood of success on the merits and, instead, relying exclusively on the potential disruption of Texas' electoral processes, the Fifth Circuit showed little respect for this Court's established stay standards. *See Nken v. Holder*, 556 U.S. 418, 434 (2009) ('most critical' factors in evaluating request for a stay are applicant's likelihood of success on the merits and whether applicant would suffer irreparable injury absent a stay). *Purcell* held only that courts must take careful account of considerations specific to election cases . . . not that election cases are exempt from traditional stay standards.").

[4] *Petteway v. Galveston Cnty.*, 86 F.4th 214, 216 (5th Cir. 2023).

[5] *See id.* at 217-18.

10

court granted rehearing en banc in an order filed November 28, 2023. Galveston County and the other appellants requested a stay of the district court's orders pending the outcome of this appeal.

JUDGE HIGGINSON's dissenting opinion says we should apply existing Circuit precedent and hold that Galveston County has not shown likelihood of success on the merits. JUDGE OLDHAM's concurring opinion, joined by a majority of the en banc court, indicates that Section 2 of the Voting Rights Act does not unambiguously support combining separately protected minorities. That portends, if not expresses, a disagreement with current Circuit precedent. JUDGE OLDHAM's opinion therefore concludes that Galveston County has shown a likelihood of success on the merits.

If I were writing on a clean slate, I would conclude that the district court faithfully applied existing precedent from this Circuit, and therefore there was no error. I would deny the stay and proceed with en banc consideration. The outcome of the en banc court's decision would apply going forward, but not to the 2024 election, assuming, of course, that the Supreme Court ultimately would not reverse us.

But we are not writing on a clean slate. Though I have not found a Supreme Court decision squarely on point, and there are mostly separate opinions, consideration of the likelihood of success on the merits does not seem to have been embraced by a majority of the Supreme Court in the *Purcell* context.

For example, in April 2020, the Supreme Court granted a stay of a district court order to the extent it required the State of Wisconsin to count absentee ballots postmarked after election day on Tuesday, April 7, 2020.[6]

---

[6] *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205 (2020).

The Court's rationale was based primarily on the fact that the plaintiffs did not ask the district court for this relief.[7]  As for legal precedent, the Supreme Court said, "[t]his Court has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election,"[8] citing *Purcell*,[9] *Frank v. Walker*,[10] and *Veasey v. Perry*.[11]  There was no discussion in either the Supreme Court's majority opinion or the dissenting opinion of likelihood of success on the merits.  Similarly, there was no mention of likelihood of success on the merits in *Purcell*, *Frank v. Walker*, or the Supreme Court's majority opinion in *Veasey*.

Later in 2020 (in October of that year), the Supreme Court denied an application to vacate a stay the Seventh Circuit had granted of a district court order enjoining enforcement of the State of Wisconsin's laws governing an impending election.[12]  The very succinct majority opinion provided no reasoning.  But there were separate opinions.  Chief Justice Roberts said it was "improper" for the district court to have "intervened in the thick of election season to enjoin enforcement of a State's laws" and expressed agreement with the Seventh Circuit's decision to stay the injunction pending appeal.[13]  The Seventh Circuit had not addressed likelihood of success on the merits in staying the district court's injunction.  Nor did Justice Gorsuch's nor Justice Kavanaugh's concurring opinions in that

---

[7] *Id.* at 1206.

[8] *Id.* at 1207.

[9] 549 U.S. 1 (2006).

[10] 574 U.S. 929 (2014).

[11] 574 U.S. 951 (2014).

[12] *Democratic Nat'l Comm. v. Wisconsin State Legislature*, 141 S. Ct. 28 (2020).

[13] *Id.* at 28.

case consider likelihood of success on the merits in agreeing that the Seventh Circuit's stay should not be vacated in light of the district court's interference with the state's handling of the impending election. JUSTICE KAGAN's dissenting opinion did not address likelihood of success on the merits either.

Factually, the closest Supreme Court case to the one before us seems to be *Merrill v. Milligan*.[14] Diverging views about the role of the likelihood of success on the merits were evident in separate opinions in that 2022 Section 2 voting rights decision. Without providing its rationale, a majority of the Supreme Court issued a stay pending appeal of a three-judge district court's injunctions.[15] The district court had concluded that Alabama's redrawing of congressional districts likely violated federal voting-rights laws and ordered that Alabama's "congressional districts be completely redrawn within a few short weeks."[16] The district court "declined to stay the injunction for the 2022 elections even though the primary elections [were to] begin (via absentee voting) just seven weeks from [the Supreme Court's decision], on March 30."[17] JUSTICE KAVANAUGH, joined by JUSTICE ALITO, opined that ordinarily, "a party asking this Court for a stay of a lower court's judgment pending appeal or certiorari ordinarily must show (i) a reasonable probability that this Court would eventually grant review and a fair prospect that the Court would reverse, and (ii) that the applicant would likely suffer irreparable harm absent the stay. In deciding whether to grant a stay pending appeal or certiorari, the Court also considers the equities

---

[14] 142 S.Ct. 879 (2022).

[15] *Id.* at 879.

[16] *Id.* (KAVANAUGH, J., concurring).

[17] *Id.*

(including the likely harm to both parties) and the public interest."[18] But, citing *Purcell*, they were of the view that there was an exception: "[a]s the Court has often indicated . . . that traditional test for a stay does not apply (at least not in the same way) in election cases when a lower court has issued an injunction of a state's election law in the period close to an election."[19] These two concurring JUSTICES did not, however, think that *Purcell* "could be read to imply that the principle is absolute and that a district court may never enjoin a State's election laws in the period close to an election."[20] They explained that "[a]lthough the Court has not yet had occasion to fully spell out all of its contours," they "[thought] that the *Purcell* principle thus might be overcome even with respect to an injunction issued close to an election if a plaintiff establishes at least the following: (i) the underlying merits are entirely clearcut in favor of the plaintiff; (ii) the plaintiff would suffer irreparable harm absent the injunction; (iii) the plaintiff has not unduly delayed bringing the complaint to court; and (iv) the changes in question are at least feasible before the election without significant cost, confusion, or hardship."[21]

THE CHIEF JUSTICE dissented in *Merrill v. Milligan*, "because," he said, "in my view, the District Court properly applied existing law in an extensive opinion with no apparent errors for our correction."[22] Nevertheless, CHIEF JUSTICE ROBERTS recognized that "while the District Court cannot be faulted for its application of *Gingles*, it is fair to say

---

[18] *Id*. at 880 (citations omitted).

[19] *Id*.

[20] *Id*. at 881.

[21] *Id*.

[22] *Id*. at 882.

No. 23-40582

that *Gingles* and its progeny have engendered considerable disagreement and uncertainty regarding the nature and contours of a vote dilution claim."[23] He explained what he would have done:

> In order to resolve the wide range of uncertainties arising under *Gingles*, I would note probable jurisdiction in *Milligan* and grant certiorari before judgment in *Caster*, setting the cases for argument next Term. But I would not grant a stay. As noted, the analysis below seems correct as *Gingles* is presently applied, and in my view the District Court's analysis should therefore control the upcoming election. The practical effect of this approach would be that the 2022 election would take place in accord with the judgment of the District Court, but subsequent elections would be governed by this Court's decision on review.[24]

Though I would take a similar approach in the present case, CHIEF JUSTICE ROBERTS's position did not carry the day in *Merrill*. A stay was granted. Accordingly, it appears to me the best path forward in deciding whether to grant a stay today is to apply the framework set forth by JUSTICE KAVANAUGH's concurring opinion in *Merrill*. I therefore conclude that the parties advocating that new districts should be put in place before the impending election have not shown that the underlying voting rights issue is "entirely clearcut" in their favor. There is a circuit split. Our court has taken the issue en banc to decide whether our existing precedent correctly construed Section 2 of the Voting Rights Act. Accordingly, I have voted to grant a stay pending appeal.

JUDGE HIGGINSON's dissenting opinion is critical of our court for setting this case for argument in May. We did so because we have a very full January en banc docket. I and others are willing to add this case to the January

---

[23] *Id.* at 882-83.

[24] *Id.* at 883.

docket, but a majority of the court voted not to do so. With great respect to JUDGE HIGGINSON, I think the only impact moving the oral argument to January could have is to get our decision to the Supreme Court at an earlier date for review, if indeed that Court is going to await an en banc decision from us. Given the cost and complexities of the election process, a "do over" of filing deadlines or the primary election process for the Galveston County Commissioner's Court in January or February is not feasible or supported by case law. If we do not issue a stay now, the en banc court does reverse the district court, and we were to restart the election process, it is very probable that a different set of candidates would file. There would be little time for those candidates to campaign, and the time and resources expended by campaigns that commenced in December, or earlier, would be for naught. There is also a significant concern about public confusion.

For all these reasons, I concur in granting a stay pending appeal.

JAMES C. HO, *Circuit Judge*, joined by ELROD, *Circuit Judge*, concurring:

Our colleagues explain why "the *Purcell* principle requires a stay." *Ante*, at 4 (Oldham, J., concurring). *See also ante*, at 9 (Richman, C.J., concurring). Put simply, under *Purcell*, it is too late in the day for federal courts to interfere with the district lines that will govern the 2024 election cycle, given that we're now on the eve of deadlines set forth under Texas law.

But that does not answer one question raised by Judge Higginson in his dissent: Why are we waiting until May 2024 to begin our en banc deliberations in this matter? *Post*, at 20-21 (Higginson, J., dissenting).

No one knows how long it will take for every member of our en banc court to decide this case on the merits—for comparison, look at the cases that remain pending on our 2023 en banc calendar. Nor does anyone know how long it will take for the Supreme Court to complete its review of whatever decision we issue. Perhaps this case will have run its course by sometime in 2024. Perhaps it will not resolve until 2025. Perhaps it won't resolve before two years from today—on the eve of deadlines for the 2026 cycle.

I'm aware of no good reason why we cannot add this matter to our January 2024 en banc docket. On various occasions, our court has shown that we can act expeditiously when necessary. Given the importance of the issues presented, there's every reason to do so here. *See ante*, at 16 (Richman, C.J., concurring) (supporting "moving the oral argument to January" and observing that that would "get our decision to the Supreme Court at an earlier date for review").[1]

---

[1] As an alternative to fulsome en banc deliberations, we also could've simply authorized a three-judge panel to decide these issues as an original matter. *See*, *e.g.*, *Affholder, Inc. v. S. Rock, Inc.*, 746 F.2d 305, 311 (5th Cir. 1984) ("Mindful of the law of the circuit rule, which forbids one panel to overrule another save when a later statute or Supreme Court decision has changed the applicable law, this opinion has been considered

---

not only by all members of the panels in those two cases but also by all judges in active service who were not members of those two panels. . . . [T]he court has sua sponte reconsidered those two opinions, authorized their overruling, and chosen to adhere to this opinion."). *See also Gallagher v. Wilton Enters., Inc.*, 962 F.2d 120, 124 n.4 (1st Cir. 1992); *United States v. Brutus*, 505 F.3d 80, 87 n.5 (2nd Cir. 2007); 7TH CIR. R. 40(e); *United States v. Meyers*, 200 F.3d 715, 721 & n.3 (10th Cir. 2000); *Robinson v. Dep't of Homeland Sec. Off. of Inspector Gen.*, 71 F.4th 51, 56 n.1 (D.C. Cir. 2023); *Policy Statement on* En Banc *Endorsement of Panel Decisions* (D.C. Cir. Jan. 17, 1996).

STEPHEN A. HIGGINSON, *Circuit Judge*, joined by STEWART, GRAVES and DOUGLAS, *Circuit Judges*, dissenting:

Appellant Galveston County filed its stay motion on Friday. We gave the Respondents the weekend to respond.[1] I dissent because Galveston County's stay request should fail at the first step of *Nken* review. *See Nken v. Holder*, 556 U.S. 418, 434 (2009).

First, it is settled law in our own circuit that nothing in the history or text of the Voting Rights Act prevents members of multiple-minority groups from filing a vote-dilution claim together. *League of United Latin Am. Citizens v. Clements*, 999 F.2d 831, 864 (5th Cir. 1993) (en banc); *see Campos v. City of Baytown*, 840 F.2d 1240 (5th Cir. 1988). The Eleventh Circuit expressly came to the same conclusion in *Concerned Citizens of Hardee County v. Hardee County Board of Commissioners*, 906 F.2d 524, 526 (11th Cir. 1990). The Second and Ninth Circuits have implicitly allowed combined claims to go forward. *See Pope v. County of Albany*, 687 F.3d 565, 572 n.5 (2d Cir. 2012); *Badillo v. City of Stockton*, 956 F.2d 884, 891 (9th Cir. 1992).[2] Only a single, divided circuit has prevented Black and Latino citizens from bringing a unified vote-dilution claim. *Nixon v. Kent County*, 76 F.3d 1381, 1393 (6th Cir. 1996) (en banc).

---

[1] To be clear, the current stay posture is that "the administrative stay imposed terminated when the court granted rehearing en banc." Order, No. 23-40582, *Petteway v. Galveston County* (5th. Cir. Nov. 30, 2023)).

[2] Considerable scholarship supports this application of Section 2. *See* Scotty Schenk, *Why* Bartlett *is Not the End of Aggregated Minority Group Claims Under the Voting Rights Act*, 70 DUKE L.J. 1883, 1889 n.29 (2021); *see also* Sara Michalowski, *A Tale of Two Minority Groups: Can Two Different Minority Groups Bring a Coalition Suit Under Section 2 of the Voting Rights Act of 1965?*, 63 CATHOLIC U.L. REV. 271, 274 (2013); Kevin Sette, *Are Two Minorities Equal to One?: Minority Coalition Groups and Section 2 of the Voting Rights Act*, 88 FORDHAM L. REV. 2693, 2731 (2020).

No. 23-40582

Significantly, the Supreme Court recently confirmed that under Section 2 of the Voting Rights Act, judicial intervention is appropriate to remedy discriminatory gerrymandering in "instances of intensive racial politics where the excessive role of race in the electoral process denies minority voters equal opportunity to participate." *Allen v. Milligan*, 143 S. Ct. 1487, 1510 (2023) (internal citation and quotation marks omitted). Significantly, the Court then *denied* two applications sought by Alabama to stay the district court's decision to direct a special master to draw new state congressional maps. *Allen v. Milligan*, 216 L. Ed. 2d 1311 (2023); *Allen v. Caster*, 216 L. Ed. 2d 1311 (2023).

The election at issue—which the district court comprehensively showed will deny minority voters of Galveston equal opportunity to participate—takes place in November 2024. The Supreme Court "has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (per curiam) (citing *Purcell v. Gonzalez*, 549 U. S. 1 (2006)); *see Memphis A. Philip Randolph Inst. v. Hargett*, 977 F.3d 566, 572 (6th Cir. 2020). Yet our court's stay, compounded by two interrelated decisions we also take—revisiting settled, thirty-five year old precedent[3] yet calendaring that re-argument six months in the future[4]—creates the very problem the Supreme Court in *Purcell* told

---

[3] *United States v. Corner*, 598 F.3d 411, 414 (7th Cir. 2010) (en banc) ("It is rarely appropriate to overrule circuit precedent just to move from one side of a conflict to another, [except] when this circuit can eliminate the conflict by overruling a decision that lacks support elsewhere."). *Cf. NetChoice, LLC v. Paxton*, 142 S. Ct. 1715, 1716 (2022) (Alito, J. dissenting) ("Members of this Court have argued that a determination regarding an applicant's likelihood of success must be made under 'existing law.'" (citing *Merrill v. Milligan*, 142 S. Ct. 879 (2022) (Roberts, C. J., dissenting))).

[4] The court already is scheduled to convene to hear en banc matters in January, just two months away.

courts to avoid: The stay imposed today will last through the May argument until we issue our decision, which may be months later, on the eve of the election or later.[5]

Importantly also, the majority's stay order offers *no rebuttal*—factual or legal—of the district court's 150-page opinion entered with firsthand benefit of an evidentiary hearing that lasted 10 days.[6] The veteran district judge included in his opinion *42 pages of factual findings* detailing the "stark and jarring" and "mean-spirited" transformation of Precinct 3 from a majority-minority district to a district with almost no minority voters.[7]

---

[5] Conclusively, we are not "on the eve of an election." *Republican Nat'l Comm.*, 140 S. Ct. at 1207. Galveston is not "five days before the scheduled election," *id.*, nor obviously is voting already underway, *Democratic Nat'l Comm. v. Wisconsin State Legislature*, 141 S. Ct. 28, 31 (2020). The election is one year away and early voting in the primary would not begin, at the earliest, until nearly three months from now. *Important Election Dates 2023-2024*, Tex. Sec'y of State, https://www.sos.state.tx.us/elections/voter/important-election-dates.shtml. "[E]ve of an election" cannot be a year from an election. In fact, the Supreme Court recently has clearly instructed our court to advance litigation when an election is a year away. *See, e.g., Ardoin v. Robinson*, 143 S. Ct. 2654, 2654 (June 26, 2023) (mem.) ("Stay heretofore entered by the Court . . . vacated. This will allow the matter to proceed before the Court of Appeals for the Fifth Circuit for review in the ordinary course and in advance of the 2024 congressional elections in Louisiana."). *Even* if this were "the eve of an election," and *even* if a heightened version of stay factors were to apply, it *is* clearcut that plaintiffs would prevail under our circuit's "existing precedent." *Petteway v. Galveston County*, 86 F.4th 214, 218 (5th Cir. 2023), *reh'g en banc granted, opinion vacated*, No. 23-40582, 2023 WL 8223483 (5th Cir. Nov. 28, 2023). Our panel explicitly affirmed the district court's application of existing precedent. *Id.* That precedent has been the stability for legislatures across our circuit for almost three decades.

[6] The oppositions filed by the three Respondents, given a weekend to work, totaled 72 pages—yet the majority rejects their arguments without explanation.

[7] As all three Respondents to this motion emphasize, the district court rejected the race-neutral reasons proffered by the County to explain the *2021* dissolution of Precinct 3. *Cf. Voting Determination Letter*, U.S. Dep't of Just. (Mar. 5, 2012), https://www.justice.gov/crt/voting-determination-letter-38 (Letter from the Department of Justice objecting to Galveston County *2012*'s redistricting plan as a "retrogression in

No. 23-40582

There should be no doubt that, in giving ourselves a half-year delay just to *hear* oral argument to reconsider law that has been ours for decades, and is the near-consensus application of Supreme Court law, we have ensured that the district court's directive—that Galveston remedy its racially discriminatory redistricting project—will be stymied for an election that will take place approximately a year from now. That delay-and-default ruling has no precedent and stands in stark contrast to the Supreme Court's guarantee to all of an equal right to vote, which the Court reminded us almost a century and a half ago, is "preservative of all rights." *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886).

---

minority voting strength in Precinct 3"). Galveston County's decade-long effort to abolish the only majority-minority district in the County occurs in the context of a history of restrictions on the political power of non-white Texans. *See Smith v. Allwright*, 321 U.S. 649, 656-57 (1944) (holding that resolution restricting ability to vote in Democratic Party primaries to "all white citizens of the State of Texas who are qualified to vote under the Constitution and laws of the State" violated the Fourteenth and Fifteenth Amendments).